[Civ. No. 308. First Appellate District—December 20, 1906.]

## PAUL P. AUSTIN, Respondent, v. UNION PAVING AND CONTRACTING CO., Appellant, and JOHN LACKMAN, Sheriff, etc., Respondent.

JUDGMENT LIEN—EFFECT OF STAY BOND ON APPEAL—CONVEYANCE PENDING APPEAL.—A judgment lien arising from the docketing of a judgment against the owner of property is destroyed by the effect of a stay bond on appeal; and the owner may convey the land to anyone pending the appeal, provided it is not disposed of with intent to defraud the appellant's creditors.

ID.—INTENT TO DEFRAUD CREDITORS NOT PRESUMED.—An intent of the seller of land to defraud creditors is not to be presumed.

ID.—SALE ON EXECUTION AGAINST GRANTORS—CLOUD UPON GRANTEE'S TITLE—INJUNCTION.—A sale of land on execution against the grantor of a legal title which has passed to the plaintiff will cast a cloud upon plaintiff's title, and he has a *prima facie* right to enjoin the sale.

ID.—PLEADING—DEMURRER TO COMPLAINT—AVERMENT OF TITLE—BONA FIDE PURCHASE.—The complaint to enjoin the sale against plaintiff's remote grantor, which alleges legal title in the plaintiff, is sufficient upon general demurrer to sustain an injunction, though it does not aver that plaintiff or his immediate grantor was a purchaser in good faith and for value.

ID.—CONSTRUCTION OF STAY BOND—SUPPORT OF CONDITION.—Though
the liability of the sureties on a stay bond cannot be extended be-
yond the true meaning of the term of their contract, yet this rule
does not preclude the application of the ordinary rules for the in-
terpretation of contracts.  To support the condition of a bond, the
court will transpose or reject insensible words, or supply an omis-
sion, and explain it according to the circumstances under which it
was made, and the matter to which it relates, and will so construe
it as to effectuate the obvious intent of the parties.

ID.—OBVIOUS MISTAKE IN PENAL SUM—RECITAL—PRESUMED KNOWL-
EDGE OF SURETIES—INTENTION.—Where the stay bond was given
to stay execution upon a judgment aggregating nearly $1,000, and
the statement of the penal sum was ''$200.00,'' followed by the
recital, ''being double the amount named in the judgment,'' the
bond shows an obvious clerical mistake, and it being evident from
the terms of the bond, and the subject matter to which it relates,
and from the presumed knowledge of the sureties as to what the
law required to stay execution, that they intended to bind them-
selves in the penal sum of $2,000, it will be so construed.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order deny-
ing a new trial.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

D. H. Whittemore, for Appellant.

R. Percy Wright, for Plaintiff, Respondent.

George D. Squires, for Sheriff, Respondent.

HALL, J.—This is an appeal from a judgment in favor
of plaintiff and from an order denying the motion of defend-
ant, Union Paving and Contracting Company, for a new trial.

The first point to be considered is that the court erred in
overruling appellant's demurrer to the complaint.

The action was brought to restrain and enjoin the defend-
ants from selling a piece of land alleged to be owned by
plaintiff under a writ of execution under a judgment in favor
of appellant and against one Ellen Mowry, a former owner
of the land.  The complaint alleges that plaintiff is and ever
since the seventeenth day of January, 1903, has been the
owner in fee of the land described in the complaint and sets

up his claim of title, from which it appears that such title was derived by mesne conveyances from Ellen M. Mowry, who was the owner of the land when a judgment in an action wherein appellant was plaintiff and Ellen M. Mowry was defendant was docketed. From the complaint it appears that Ellen M. Mowry took and perfected an appeal from an order denying her motion for a new trial in said action by giving the usual bond for costs in the sum of $300 and a stay bond in the proper form in double the amount of the judgment, after which she conveyed the land to George Mowry, who subsequently conveyed it to plaintiff. The judgment having been affirmed defendant in this action took out execution and was proceeding to sell the land thereunder.

The point urged in support of the demurrer is that it is not averred in the complaint that plaintiff, or his immediate grantor, was a purchaser in good faith or for value. Plaintiff, however, according to the allegations of the complaint, is the owner of the legal title. At the time of the conveyance from Ellen M. Mowry a stay bond had been given, and appellant had no lien on the land. She had a right to sell it or otherwise dispose of it, provided she did not dispose of it with intent to defraud her creditors, which intent will not be presumed. A sale of lands upon an execution against the grantor of the holder of the legal title will cast a cloud upon the title and will be enjoined. (*Pixley* v. *Huggins,* 15 Cal. 133; *Porter* v. *Pico,* 55 Cal. 175; *Einstein* v. *Bank of California,* 137 Cal. 47, [69 Pac. 616].) In the latter case it is said: "The plaintiff is the owner of the legal title and in possession. It is presumed, until otherwise determined, that her title is good. The fact that the conveyance was made to her by her husband while indebted to defendant corporation would be a circumstance to be carefully considered in determining the question as to whether or not the conveyance was made with a fraudulent intent as to creditors, but upon an application for a temporary injunction we know of no rule that would require the court to presume that the conveyance was fraudulent, and, before the trial of the question, allow a sale to be made, thus clouding the plaintiff's title and compelling her to resort to an independent action for the purpose of removing such cloud."

Undoubtedly the holder of a junior title who seeks the aid
of a court of equity to protect his title against the holder of
a senior title must aver and prove that he is a purchaser for
value without notice, actual or constructive.    Thus the holder
of a subsequent recorded deed, in order to prevail over the
holder of an unrecorded prior deed, must aver and prove that
he was a purchaser for value and without notice.    His right
to recover depends upon such facts, and the cases cited by
appellant are all of this character.    (*Everson* v. *Mayhew,* 65
Cal. 163, [3 Pac. 641] ; *Mariner* v. *Smith,* 27 Cal. 652.)

But in the case at bar plaintiff alleged himself to be the
holder of the legal title, and as such was *prima facie* entitled
to have his title protected from the cloud that would be cast
thereon by the sale under the execution against his grantor.
(*Pixley* v. *Huggins,* 15 Cal. 133 ; *Porter* v. *Pico,* 55 Cal. 175 ;
*Einstein* v. *Bank of California,* 137 Cal. 47, [69 Pac. 616].)

The court did not err in overruling appellant's demurrer
to the complaint.

The only other point in the case concerns the sufficiency of
the bond given in the action against Ellen M. Mowry to stay
execution of the judgment against her pending the appeal
and thus to release her land from the lien of said judgment.

The defendants objected to the admission of the bond in evi-
dence and also raised the same point upon motion for non-
suit.    The bond is set out in full in the findings and thus the
point is again presented in the contention that the findings
do not support the judgment.    The objection to the suffi-
ciency of the bond is that by it the sureties were not bound
in double the amount of the judgment appealed from.

It is alleged in the complaint in this action that the judg-
ment recovered against Ellen M. Mowry was for the sum of
$900.29, together with costs in the sum of $90.25.    This alle-
gation is not denied by the answer and thus stands as an ad-
mitted fact.    The bond given was in the usual form and cor-
rectly recited the giving of the judgment, except that it stated
the amount of the judgment to be $900.99 and costs in the sum
of $87.58.    After providing for a liability in the sum of $300
to cover costs and damages on appeal, the bond proceeds as
follows : "And whereas said appellant is desirous of staying
the execution of said judgment during the pendency of said

appeal from order denying motion for a new trial, we do further, in consideration thereof and of the premises, jointly and severally undertake and promise, and do acknowledge ourselves jointly and severally bound in the further sum of $200.00, being double the amount named in said judgment, that, etc., etc.'' Appellant contends that by the terms of the stay bond the sureties became bound in the penal sum of $200 and no more. If this contention be correct the bond did not release the land of the judgment debtor from the lien of the judgment and the judgment in this action should be reversed. We do not think the contention of appellant is well founded.

It is true that the liability of sureties cannot be extended beyond the true meaning of the terms of their contract, but this rule does not preclude the application of the ordinary rules for the interpretation of contracts. In *Longfellow* v. *McGlynn*, 56 Minn. 312, which was an action against sureties on a bond, the court said: ''We are bound to assume that the parties intended the instrument to be effectual, not nugatory. And if what was intended as the condition may be ascertained from the terms, read in connection with the circumstances under which, and the purposes for which, as shown by those circumstances, the bond was executed, it must be sustained. . . . To thus ascertain what the parties intended by the instrument executed is strictly consistent with the rule that a surety is not to be held beyond the contract he has entered into. What contract he has made is to be determined by the same rules of interpretation as are applied to other contracts, the purpose being to ascertain what he has bound himself to do. When that is ascertained his obligation is strictly limited to it.''

In *London and San Francisco Bank* v. *Parrott*, 125 Cal. 472, [73 Am. St. Rep. 64, 58 Pac. 164], in discussing the rules applicable to the interpretation of the contract of a guarantor, it is said: ''But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other written instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a

fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose for which it was to be applied."

In *Swain* v. *Graves,* 8 Cal. 549, suit was brought upon an appeal bond in which the word "plaintiff" was by mistake used instead of "defendant" or "appellant," and yet it was held that the action could be maintained. The court said: "An appeal bond will be so construed as to carry out the obvious intentions of the parties. (*People* v. *Judges,* 1 Wend. (N. Y.) 28; *Yocum* v. *Barnes,* 8 B. Mon. (Ky.) 497.) 'To support the condition of a bond the court will transpose or reject insensible words, and construe it according to the obvious intent of the parties.' (1 Saund. 65.)"

In *Grant* v. *Brotherton,* 7 Mo. 458, the sureties bound themselves in the sum of "two thousand," and it was held that the bond should be read as though the word "dollars" followed the words "two thousand," it appearing from the face of the bond that it was given to secure the forthcoming of property of the value of $1,000. The court supplied an omission so as to effectuate the evident purpose of the parties.

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.)

The bond now under consideration upon its face showed that it was given to stay execution of a judgment for nearly $1,000, and though the penal sum written in the bond is $200, it is followed by the recital, "being double the amount named in said judgment." The purpose of the bond was to secure a stay of execution, to do which the law requires a bond in double the amount of the judgment, and of this the sureties are presumed to have knowledge. On reading the bond, with knowledge of the law and the purposes stated in the bond for which it was given, the ordinary mind is forced to the conviction that by a misprision and clerical error there was written in the bond "$200.00" instead of "$2,000.00." This conviction is further strengthened by the provision in the bond that if the judgment be affirmed, and appellant does not pay the same within thirty days after filing of the *remittitur,* judgment for the same may be entered against the sureties on motion. This, in fact, was done, as appears from the un-

denied averment of the complaint. The condition that, if the appellant fails to pay the judgment, costs and damages, which, if affirmed as a whole, would amount to about $1,000 or over, judgment may be entered against the sureties for such amount, is quite inconsistent with the idea that the sureties bound themselves only in the sum of $200. Judgment could only be entered against them for $1,000 upon the theory that they had bound themselves in at least that amount. Interpreting the words of this bond in the light of the circumstances under which it was given it is evident that the sureties intended to bind themselves in the penal sum of $2,000.

For the foregoing reasons the judgment is affirmed.

Harrison, P. J., and Cooper, J., concurred.