[Sac. Nos. 2470 and 2503.   Department Two.—December 31, 1917.]

HOLLENBECK–BUSH PLANING MILL COMPANY (a Corporation), Respondent, v. F. J. AMWEG, etc., et al., Defendants; BRADLEY COMPANY (a Corporation), et al., Appellants; NATIONAL SURETY COMPANY (a Corporation), Respondent.

ROBERT CURRIE et al., Respondents, v. F. J. AMWEG, etc., et al., Defendants; BRADLEY COMPANY (a Corporation), Appellant; NATIONAL SURETY COMPANY (a Corporation), Respondent.

PIONEER BRICK COMPANY (a Corporation), Respondent, v. F. J. AMWEG, etc., et al., Defendants; BRADLEY COMPANY (a Corporation), et al., Appellants; NATIONAL SURETY COMPANY (a Corporation), Respondent.

CITRUS LUMBER COMPANY (a Corporation), Respondent, v. F. J. AMWEG, etc., et al., Defendants; BRADLEY COMPANY et al., Appellants; NATIONAL SURETY COMPANY (a Corporation), Respondent.

FRED W. STONE et al., etc., Respondents, v. F. J. AMWEG, etc., et al., Defendants; BRADLEY COMPANY (a Corporation), et al., Appellants; NATIONAL SURETY COMPANY (a Corporation), Respondent.

BUILDING CONTRACT—CONTRACTOR'S BOND—SINGLE BOND FOR TWO CONTRACTS.—Where there were two contracts by the same contractor for different parts of the work on the same building, both contracts dated on the same day and recorded within a few days of each other, a surety company's bond under the provisions of section 1183 of the Code of Civil Procedure, in the aggregate amount of the two contracts, reciting correctly the date of the contract and that on that day the owner "entered into a certain contract" for the erection of a building (describing it), covers both contracts, the surety's liability being gathered from the language used when read in the light of the circumstances attending the transaction, and the use of the singular number instead of the plural in referring to the contracts, amounting at most to a clerical error which could not have prejudiced or injured the surety.

ID.—CONSTITUTIONAL LAW—SPECIAL LEGISLATION—IMPOSING IMPROPER BURDEN.—Section 1183 of the Code of Civil Procedure, requiring a bond from an owner on a building contract, is not unconstitutional as class legislation or for lack of uniformity of operation, or as imposing upon the owner an improper burden in addition to the right of lien given to persons furnishing labor and materials.

ID.—IMPOSING PENALTIES—DISCRIMINATORY LEGISLATION.—The requirement by section 1183 of the Code of Civil Procedure of a bond from an owner on entering into a building contract does not render that section unconstitutional either as imposing penalties by legislative enactment or as discriminatory legislation against owners of real property.

ID.—TIME OF FILING BOND—LIABILITY OF SURETY.—Failure to file the surety bond before work is commenced and at the time of the filing of the contractor's bond does not invalidate the contract of the surety company.

ID.—UNITED STATES CONSTITUTION.—Section 15 of article XX of the state constitution, interpreted by state decisions as authorizing liens in excess of the contract price, does not violate the fourteenth amendment of the constitution of the United States, forbidding, by states, the denial of equal protection of the laws or the deprivation of property without due process of law.

ID.—FAILURE TO FILE CONTRACT OR BOND—LIABILITY OF OWNER.—The failure of the owner to file the contract and bond before the commencement of the work as provided by section 1183 of the Code of Civil Procedure entitles each lien claimant to a lien against the property to the full amount of the materials used or labor expended, less just credits in favor of the owner or contractor.

APPEALS from judgments of the Superior Court of Tulare County.   J. A. Allen, Judge.

The facts are stated in the opinion of the court.

Orville C. Pratt, Jr., for Appellant.

Power & McFadzean, and Murry & Knupp, for Certain Respondents.

Heller, Powers & Ehrman, for Respondent National Surety Company.

MELVIN, J.—It has been stipulated that one transcript be used in the appeals from the judgment in these consolidated actions.

The appellants, except R. Bradley and Bradley Company (appellants in the appeal numbered Sac. 2470), are materialmen or laborers who commenced separate actions for the foreclosure of mechanics' liens upon certain real property in the city of Porterville, Tulare County. Bradley Company is the owner of the property on which is the building for the construction of which the liens were asserted. Defendant, F. J. Amweg (doing business as F. J. Amweg Company) was the contractor who undertook the erection of said building, and the National Surety Company executed the bond in behalf of the contractor under the provisions of section 1183 of the Code of Civil Procedure.

In the five actions consolidated for trial a personal judgment was rendered against the contractor (who did not defend) for the full amounts of the asserted indebtedness, and liens for these sums were declared upon the real property upon which the building was erected. It was also adjudged that the owner, materialmen, and laborers could recover nothing from the National Surety Company. We will first consider the appeal from that portion of the judgment thus exonerating the Surety Company.

The contractor Amweg and the appellant Bradley Company entered into two written agreements for the construction of the building. Both were made on July 19, 1913. One covered all of the labor and material except the brick work. The contract price was $8,222. This instrument was filed in the recorder's office on July 21, 1913. The second agreement was for the labor and material to be used in the construction of the brick work in the building, and was for the sum of three thousand dollars. This was recorded on July 25, 1913.

On July 19, 1913, the National Surety Company executed and delivered the bond here in controversy, in the sum of $5,611, one-half of the aggregate amount of the two contracts for the construction of the building. In this bond it is recited that under date of July 19, 1913, Amweg entered into "a certain contract" for the erection of a building in Porterville for the sum of $11,222. This is the aggregate of the two sums specified in the two writings of that date. The agreement for the construction of the building is described in the singular throughout the bond. This bond was filed August 9, 1913. It was avowedly executed for the purpose

of complying with the provisions of section 1183 of the Code of Civil Procedure, as amended in 1911 [Stats. 1911, p. 1313].

Respondent Surety Company contends that the bond in the singular number refers to an entirely different contract from the two agreements for the construction of the building; and that if as a matter of fact the parties intended it as one having application to those two writings, there should have been a demand and, if necessary, an action for the reformation of said bond before plaintiffs could recover upon it. Both of these contentions are without merit. It is true that the liability of a surety is measured by the terms of the agreement, and that courts are not swift to extend that liability by construction; but a surety is not hedged by any sanctity which prevents the application of the same rules to the construction of its agreements as are used to admeasure the obligations arising under other contracts. The extent of the surety's liability must be gathered from the language used when read in the light of the circumstances attending the transaction. (5 Elliott on Contracts, sec. 3941.) The circumstances surrounding the execution of this bond were such that there can be no rational doubt regarding the intention of the surety to indemnify its principal for certain losses which might arise under the two building contracts of the same date. The use of the singular rather than the plural amounts, at most, to a mere clerical error which could not have operated to the prejudice or injury of the surety. Hence it is not relieved from liability. (32 Cyc. 69; *Stiewell* v. *American Surety Co.,* 70 Ark. 512, [68 S. W. 1021]; *Austin* v. *Union Paving & Contracting Co.,* 4 Cal. App. 610, [88 Pac. 731]; *Swain* v. *Graves,* 8 Cal. 549; *Morgan* v. *Thrift,* 2 Cal. 562.)

We conclude, therefore, that the court properly found the bond to have been executed and delivered "in order to secure the faithful performance of said two contracts by the said defendant, F. J. Amweg."

The court having reached a conclusion of law to the effect that the bond of the National Surety Company was invalid, that respondent seeks to uphold that conclusion upon the theory that section 1183 of the Code of Civil Procedure, providing for such a bond, is unconstitutional, its counsel expressing a hope that this court will take "a new viewpoint" upon the subject and one different from that of

the court in Bank when *Roystone Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15], was decided. But after an examination of the able discussion of the objections to said section 1183 of the Code of Civil Procedure, contained in the briefs of the respondent Surety Company, we are constrained to adhere to the doctrines and conclusion of that case. Counsel's first attack upon the constitutionality of the statute is based upon the supposed violation of section 25 of article IV of the constitution, inhibiting the passage of special laws. But this is not a new viewpoint. The same objection to the constitutionality of the act was urged in the Roystone case, and Mr. Justice Shaw, in his opinion in that case, used the following language, at page 542 [of 171 Cal., at page 22 of 154 Pac.] : "It is urged that the provisions of the act requiring persons who make building contracts to file a bond, while no such requirement is made of any other person who may wish to make other kinds of contracts, creates a lack of uniformity, and is class legislation. There is an intimation to this effect in *Shaughnessy* v. *American Surety Co.,* 138 Cal. 543, (69 Pac. 250, 71 Pac. 701), but the point was not directly involved, and the case does not hold to that doctrine. It is not sustained by authority. The rules regarding legislation respecting classes have been thoroughly settled in this state. The case most often cited is *Pasadena* v. *Stimson,* 91 Cal. 238, (27 Pac. 604). The decision in that case has been followed in very many cases since it was rendered. The principle announced is that a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction. To this it has been added, in some cases, that the distinction must have some reasonable relation to the legislation enacted respecting the class. The fact that the constitution confers upon persons performing labor or furnishing materials for the construction of a building the right to a lien thereon, at once establishes these persons as a class, and makes a constitutional distinction between them and all other persons making contracts. This justifies legislation for the benefit of such claimants and governing the conduct and contracts of the owner of the property and the person contracting to construct buildings thereon. There is no improper classification."

Further, respondent attempts to show that section 1203 of the Code of Civil Procedure, as it stood prior to 1911, and the provisions for a bond contained in section 1183 of the Code of Civil Procedure, as amended in 1911, are the same in result to the owner, as each imposed upon him an improper burden in addition to the right of lien given to the persons furnishing labor and materials. This same matter was discussed and decided adversely to respondent's contention in *Roystone Co.* v. *Darling, supra.*

It is further argued that the provisions exempting the owner from liability beyond the contract price if he file a bond and making him liable for liens to the extent of the value of the labor and materials if he do not provide such bond is in violation of constitutional inhibitions of the imposition of penalties by legislative enactment. The constitution (section 15, article XX) guarantees a lien to the mechanic and materialman extending to the full value of all labor bestowed and material furnished. But the legislature may, under authority given by the constitution, provide certain conditions, upon compliance with which the owner may restrict recovery to the sum mentioned in the contract. Such provision does not impair any existing right of the owner—does not, in short, penalize him—but the effect is "to confer a right not previously existing by which his liability may, under certain circumstances, be curtailed." (*Stimson Mill Co.* v. *Nolan,* 5 Cal. App. 754, [91 Pac. 262].)

Nor does the statute in question discriminate against the owners of real property. Respondent by way of illustration refers to work which might be done upon a gold dredger of equal value with that bestowed upon a building attached to real property, implying that the owner of the dredger would not be compelled to protect himself by filing a bond while the owner of the building would be required to furnish such security. The illustration proves no unconstitutional discrimination. In either case a lien for the full value of the labor would attach if the owner did not protect himself by a bond. In the one case the lien would attach incidentally to the land as well as to the building, but that is due to the constitution itself and not to anything in the criticised statute. Other points made by respondent are fully met by the authorities cited above and require no further discussion. If the court's determination that the contract was invalid

was based upon the supposed unconstitutionality of section 1183 of the Code of Civil Procedure, such conclusion was erroneous.

The failure to file the surety bond before work was commenced and at the time of the filing of the contractor's bond did not invalidate the contract of the Surety Company. (*Hammond Lumber Co.* v. *Willis,* 171 Cal. 565, [153 Pac. 947].)

It follows that the portion of the judgment relieving the National Surety Company from all liability under its bond must be reversed.

We now come to the consideration of Sac. No. 2470, which is the appeal of the Bradley Company. R. Bradley, the other appellant, is but a nominal party and will be disregarded in the following discussion.

The liens foreclosed by the judgment amount to $4,731.92, exclusive of interest and costs. The unpaid balance of the contract price remaining in the hands of the owner, after deducting the necessary outlay for completing the building— the contractor having abandoned it—amounts to $2,913.60. This appellant, the owner of the property, contends that the judgment of foreclosure is erroneous and excessive to the extent of the discrepancy between these two amounts, conceding its liability and the binding effect of the liens upon its land up to the amount last specified, namely, $2,913.60.

Appellant contends that it has complied substantially with the provisions of section 1183 of the Code of Civil Procedure, and so has limited its liability to the unpaid portion of the contract price. It also contends that section 15 of article XX of the constitution of California, interpreted by our decisions as authorizing liens for work and material in excess of the contract price, is itself in violation of the fourteenth amendment of the constitution of the United States, which forbids any state to deny to anyone within its jurisdiction the equal protection of its laws or to deprive any such person of property without due process of law.

Considering the latter contention first, we find Californian authority in *Stimson Mill Co.* v. *Nolan,* 5 Cal. App. 754, [91 Pac. 262], supporting the validity of our own constitutional provision regarding liens as not authorizing the taking of property without due process of law. It is true that that case was decided before the amendment to section 1183 of the

Code of Civil Procedure, but the reasoning is none the less applicable to an interpretation of that statute in its present form and of the constitutional provision giving to laborers and materialmen liens to the extent of the value of their services and the materials furnished. The court said, in part (5 Cal. App., at page 760, 91 Pac. 265) : "Assuming, as we do, the validity of section 15, article XX, of the constitution, which guarantees the lien, we find that this constitutional right of the laborer and materialman extends to the full value of all labor and materials bestowed or furnished; and, without legislation, such value is the measure of recovery. The legislature has seen fit, under the authority given it by the constitution, to provide by the sections complained of certain conditions, upon the observance of which the constitutional measure of lien and recovery is restricted to the sum specified in the contract between the owner and contractor. There is no attempt to enlarge the rights of lien claimants under any circumstances, for under the sections mentioned, where a valid contract is made, the value of the thing furnished measures the extent to which any claim can be found. The effect, therefore, of these sections is not to impair any existing right of the owner, but, in effect, to confer a right not previously existing by which his liability may, under certain circumstances, be curtailed. The owner's liberty of action in relation to this property is not invaded by the statute. He need not employ an intermediary to erect his building, but if he does, the law ingrafts upon his act certain consequences. (*Henry* v. *Evans,* 97 Mo. 47, [3 L. R. A. 332, 10 S. W. 872].) There is no taking of property without due process of law. The contract by the owner is made voluntarily and with the constitution and laws in mind, and they form part of such contract; and he must be taken to have consented to the effect of such enactments."

Similar doctrine is contained in the opinion in *Jones* v. *Great Southern Fireproof Hotel Co.,* 86 Fed. 370, [30 C. C. A. 108], written by the late Judge Lurton, who afterward became a justice of the supreme court of the United States. Commenting upon the lien statute of the state of Ohio, the learned judge said: "Such statutes rest upon the principle of natural justice which lies at the foundation of the many liens or preferences among creditors which we have cited

from both the common and civil law. It is true that a lien is created in favor of one with whom the owner has no direct contractual relations. But, if the owner makes the contract with the law before him, the law enters into and becomes a part of the contract. The legal effect of the contract is to give a lien to all who, at the instance of his contractor, shall be employed to furnish labor or materials for the work which he has let out. So far as such a statute is limited to future contracts, it cannot be said to impair the obligation of a contract. If the law be subject to no other objections, it impairs no contract, for all thereafter made are entered into upon the basis of the law. 'The inhibition of the constitution is wholly prospective. The states may legislate as to contracts thereafter made as they see fit. It is only those in existence when the hostile law is passed that are protected from its effect.' (*Edwards* v. *Kearney*, 96 U. S. 595, [24 L. Ed. 793]; *Greenwood* v. *Freight Co.*, 105 U. S. 13, [26 L. Ed. 961]; *Denny* v. *Bennett*, 128 U. S. 489, [32 L. Ed. 491, 9 Sup. Ct. Rep. 134]; *Smith* v. *Parsons*, 1 Ohio, 236, [13 Am. Dec. 608]; *Weil* v. *State*, 46 Ohio St. 450, [21 N. E. 643].) Neither can the owner be said to be thereby deprived of his property without due process of law. He has voluntarily made a contract with the law before him. He has thereby subjected his property to liability for certain debts of the contractor. His own voluntary consent is an element of the transaction. He knows what the law is, and makes a contract under that law. It is idle to say that under such circumstances he is deprived of his property without due process of law. (*Provident Inst. for Savings* v. *Jersey City*, 113 U. S. 506–514, [28 L. Ed. 1102, 5 Sup. Ct. Rep. 612].)'' It it is true that the statute under review in that case expressly provided that liens should be limited in amount to the contract price, but that fact does not impair the reasoning of the court as applicable to our constitution as interpreted by this court. Judge Lurton's opinion is supported by citations to the rulings of courts of different states in cases involving interpretation of statutes providing for liens which attach without respect to the indebtedness of the owner to the contractor.

The weight of authority is in favor of the validity of statutes and constitutional provisions like our own, and in this

behalf respondents have cited the following cases which amply support their views: *Henry* v. *Evans,* 97 Mo. 47, [3 L. R. A. 332, 10 S. W. 868]; *Mallory* v. *La Crosse Abattoir Co.,* 80 Wis. 170, [49 N. W. 1071]; *Smith* v. *Newbaur,* 144 Ind. 95, [33 L. R. A. 685, 42 N. E. 40, 1094]; *Hightower* v. *Bailey,* 108 Ky. 198, [94 Am. St. Rep. 350, 49 L. R. A. 255, 56 S. W. 147]; *Laird* v. *Moonan,* 32 Minn. 358, [20 N. W. 354]; *The Victorian,* 24 Or. 121, [41 Am. St. Rep. 838, 32 Pac. 1040]; *Barrett* v. *Millikan,* 156 Ind. 510, [83 Am. St. Rep. 220, 60 N. E. 310].

To the contention that the appellant, who is the owner of the property, is entitled to relief in equity notwithstanding its failure to file the bond at the time indicated by the statute, respondent cites the case of *Hammond Lumber Co.* v. *Willis,* 171 Cal. 565, [153 Pac. 947], and *Roystone Co.* v. *Darling,* 171 Cal. 526, [154 Pac. 15], where it was held that the failure to file the building contract and bond as provided by section 1183 of the Code of Civil Procedure entitled each lien claimant to a lien against the property to the full amount of the materials used or the labor expended thereon, less any credits justly to be made in favor of the owner or contractor. We can see no method of distinguishing this case from the Hammond Lumber Company case. The fact that the bond was tardily filed in this case and not filed at all in the other case makes no difference. But although the failure to file the bond in this case subjects appellant Bradley Company to a lien upon its property for the full amount due the plaintiffs, the Bradley Company has its remedy against the Surety Company for the difference between the full amount due plaintiffs and the fund in the hands of the owner, provided such amount shall not exceed the penal sum of the Surety Company's bond. In this connection it is to be noticed that the bond by its terms placed an obligation upon the surety to protect its principal from all liens against its property in excess of the contract price, even if section 1183 of the Code of Civil Procedure should be declared unconstitutional.

That part of the judgment in the appeal known as "Sacramento No. 2503" which exonerates the National Surety Company from all liability is reversed, with directions to the superior court to enter judgment in accordance with the

views herein expressed. That part of the judgment from which the Bradley Company appeals is affirmed.

Henshaw, J., and Victor E. Shaw, J., *pro tem.*, concurred.

Hearing in Bank denied.